UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| KELVIN PURNELL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 2:17 CV 60 ACL |
| ) | |
| CHANTAY GODERT, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Kelvin Purnell for a writ of habeas corpus under 28 U.S.C. § 2254.

### I.  Procedural History

Purnell is currently incarcerated at the Northeast Correctional Center in Bowling Green, Missouri, pursuant to the sentence and judgment of the Circuit Court of St. Louis County, Missouri.  (Doc. 12-3 at 71-73.)  On September 18, 2013, after a jury trial, Purnell was convicted of second-degree assault on a law enforcement officer and armed criminal action.  *Id.* at 62-63.  The Court sentenced him to concurrent terms of seven years' imprisonment and fifteen years' imprisonment.  *Id.* at 72.

In his direct appeal of his convictions, Purnell raised two points.  First, he argued that the trial court erred in refusing his proffered Instruction A, which would have instructed the jury to consider whether he was guilty of the lesser included offense of assault in the third degree. (Doc. 12-4.)  In his second point on appeal, he argued that his conviction for armed criminal action must be reversed because, in light of the alleged error in refusing Instruction A, there was no valid assault conviction.  *Id.*  The Missouri Court of Appeals for the Eastern District affirmed the judgment of the trial court on August 26, 2014.  (Doc. 12-8.)

1

On December 12, 2014, Purnell filed a *pro se* motion for post-conviction relief. (Doc. 12-10 at 7-12.) After the appointment of counsel, Purnell filed an amended motion and request for evidentiary hearing. *Id.* at 25-49. He argued that he was denied effective assistance of counsel because trial counsel: (1) did not call Wendell Ford as a witness; and (2) did not request the court to instruct the jury on the lesser-included offense of third-degree assault on a law enforcement officer. *Id.* The motion court denied Purnell's amended motion and his request for an evidentiary hearing. *Id.* at 54-63.

In his appeal from the denial of post-conviction relief, Purnell raised the same two ineffective assistance of counsel claims. (Doc. 12-11.) On March 14, 2017, the Missouri Court of Appeals affirmed the decision of the motion court. (Doc. 12-14.)

Purnell filed the instant Petition on August 31, 2017. (Doc. 1.) In his first ground for relief, Purnell argues that the trial court erred in refusing to instruct the jury on the lesser included offense of third-degree assault on a law enforcement officer. *Id.* at 5. In his second ground for relief, Purnell argues that counsel was ineffective for failing to call Wendell Ford at trial. *Id.* at 6.

Respondent filed a Response to Order to Show Cause, in which she argues that Purnell's claims fail on their merits. (Doc. 12.)

Purnell has filed multiple supplemental pleadings, in which he provides additional argument in support of his claims. (Docs. 23, 24, 25, 27, 30, 31.) He has also filed a "Motion for Emergency Release." (Doc. 32.)

2

## II.      Facts[1]

On May 10, 2012, Officer Andrew Weusthoff arrived at a home in St. Louis County after receiving a radio call to go to that location to act as a "standby" and keep the peace. Officer Weusthoff had been to that location before on a "standby" call.   Upon arriving, Officer Weusthoff encountered Nancy Downing, a long term care specialist with the Missouri Department of Health and Senior Services, who told him that she was there to pick up Charles Purnell to take him to a nursing home or other type of care facility.

After knocking on the door and making several unsuccessful attempts to contact Charles Purnell and his son, Petitioner Kelvin Purnell, by phone, Downing and Officer Weusthoff knocked on windows and called out their names.   At one point, Officer Weusthoff shone his flashlight through one window, and someone said, "who is out there?"   Officer Weusthoff responded, "it's the police," and asked the person to come to the front door to talk.

Officer Weusthoff testified that Petitioner opened the front door, greeted Downing, who went inside, and proceeded to walk toward the back of the house.   Officer Weusthoff stated that Petitioner did not impede their entry into the house, but when Officer Weusthoff tried to follow Downing, Petitioner "took a step in front of [him] and kind of put up his arm" and "bump[ed]" Officer Weusthoff in the chest.   Officer Weusthoff testified that the events leading up to that moment had made him suspicious and he now believed that Petitioner was trying to separate him from Downing.   At this point, Officer Weusthoff took out his handcuffs, put one on Petitioner's right arm, and said:   "Right now you are being detained until I can figure out what is going on here."   Officer Weusthoff testified that Petitioner "started pulling out his right arm, and pulling away from" him.   Officer Weusthoff said, "don't do this.

---

[1]The Court's recitation of the facts is taken from the decision of the Missouri Court of Appeals on direct review.   (Doc. 12-8 at pp. 2-5.)

3

You're only being detained.  You're not under arrest."  Petitioner looked like he was "almost kind of in shock," and Officer Weusthoff repeatedly told him that he was not under arrest.

Petitioner "started struggling away from [him] and turned back to [him] and started pulling away."  While Officer Weusthoff struggled to gain control of Petitioner, he noticed that Petitioner was "kind of hunching over and tucking his left hands into the front."  As Officer Weusthoff tried to pull out Petitioner's left hand, he saw "a flash" and heard "a loud bang."  He believed Petitioner had fired a shot over his right shoulder.  When Officer Weusthoff tried to get Petitioner onto the floor to handcuff him, Petitioner stood up and Officer Weusthoff saw a black gun in Petitioner's hand.  Officer Weusthoff grabbed the gun with both hands, and when Petitioner tried to pull away, Officer Weusthoff threw his weight onto Petitioner and they fell onto the couch in the living room where they continued their struggle.  Officer Weusthoff realized that Petitioner had gotten his right hand free, and he became concerned that Petitioner might be able to fire his gun.  Officer Weusthoff drew his own gun and put it to Petitioner's head; he said, "let it go" and then more forcefully, "let it the f--- go."

Officer Weusthoff struck Petitioner in the head with the butt of the gun in an attempt to stun Petitioner and gain control of his gun, but then Petitioner let go of his own gun and grabbed the officer's gun with both hands and tried to twist it toward Officer Weusthoff's face.  Not knowing how long he could hold off Petitioner and knowing there was still a bullet in the chamber, Officer Weusthoff turned the muzzle of his gun into the carpet and fired the shot.  Startled, Petitioner fell back or stepped back, but then grabbed the magazine that had fallen out of Officer Weusthoff's gun and ran to the back of the house.  During the altercation Officer Weusthoff started yelling for Downing to call 911, which she did.  Officer Weusthoff was holding his gun and then grabbed Petitioner's gun off the floor.  He then ran out the front door

4

and eventually called for backup.   Other officers arrived and they surrounded the house. Petitioner eventually surrendered to the police.

### III.  Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000).   With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Id.* at 405.  Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court=s] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case."  *Id.*   Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.* at 410.  Although the Court

5

failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

### IV. Petitioner's Claims

#### 1. Ground One

In his first ground for relief, Purnell argues that the trial court erred in refusing to instruct the jury on the lesser included offense of third-degree assault on a law enforcement officer. Respondent argues that Purnell's claim does not raise a federal issue.

The second degree assault of a law enforcement officer instruction submitted to the jury, Instruction No. 8, provided as follows, in relevant part:

> As to Count III, if you find and believe from the evidence beyond a reasonable doubt:
> First, that on or about May 10, 2012, in the County of St. Louis, State of Missouri, the defendant recklessly placed Andrew Weusthoff in apprehension of immediate serious physical injury *by firing a gun while Andrew Weusthoff was attempting to handcuff the defendant*…

(Doc. 12-3 at 46) (emphasis added).

Defense counsel offered the lesser included instruction for third degree assault of a law enforcement officer, Instruction A, which provided as follows:

> As to Count [ ] you do not find the defendant guilty of assault of a law enforcement officer in the second degree as submitted in Instruction No. ___, you must consider whether he is guilty of assault of a law enforcement officer in the third degree under this instruction.
> As to Count [ ], if you find and believe from the evidence beyond a reasonable doubt:
> First, that on May 10, 2012, in the County of St. Louis, State of Missouri, the defendant knowingly caused physical contact with Officer Andrew Weusthoff without the consent of Andrew Weusthoff *by bumping his chest*,….

*Id.* at 54 (emphasis added). The court refused to submit the instruction. *Id.*

Purnell raised this claim in his direct appeal of his convictions. The Missouri Court of Appeals rejected the claim, finding that Instruction A was not a lesser included offense of the

6

charged offense. (Doc. 12-8 at 9.)  The Court explained:

> The charged offense was an assault based on Defendant's firing a gun. The purported lesser included offense submitted in Instruction A—that of bumping Officer Weusthoff's chest—was based on entirely different conduct, and that conduct was not charged in the indictment. As such, Instruction A did not submit a lesser included offense of the offense that was charged in the indictment, and it was proper for the trial court to refuse it.

*Id.*

As the Eighth Circuit has observed, "the Supreme Court has never held that there is a constitutional requirement that lesser-included offense instructions be given in noncapital cases." *Carney v. Fabian*, 487 F.3d 1094, 1097 (8th Cir. 2007); *see also Selvey v. Payne,* No. 4:15-CV-1586-NAB, 2018 WL 6171445, at *5 (E.D. Mo. Nov. 26, 2018) (denying habeas relief based on failure to instruct the jury on lesser-included offenses in a noncapital case; stating, "[t]he United States Supreme Court has never held that there is a constitutional requirement that lesser-included offense instructions be given in noncapital cases"). Because Purnell's claim does not implicate clearly established federal law, it should be denied.

Further, the Missouri Court of Appeals found that the instruction proposed by Purnell was not, in fact, a lesser included offense as it instructed on uncharged conduct. This finding is supported by the record. Purnell was charged with second-degree assault based upon the conduct of firing a shot, whereas Purnell's proposed instruction was based on the earlier conduct of chest bumping the officer. The trial court did not err in failing to give an instruction based on uncharged conduct.

Thus, Ground One is denied.

### 2. Ground Two

In his second ground for relief, Purnell argues that trial counsel was ineffective for not calling Wendell Ford as a witness at trial. Respondent argues that this claim lacks merit because Ford would not have provided a viable defense.

Purnell raised this claim in his post-conviction relief motion, and in his appeal from the denial of post-conviction relief. Purnell claimed that he told trial counsel that Ford—a neighbor—was willing to testify that he had seen Officer Weusthoff rush into Purnell's front door as soon as Purnell had opened it. He further argued that Ford would have testified that Purnell was well-liked by his neighbors and was a good care-giver to his father. The motion court found as follows:

> According to Movant, witness Ford only observed those events preceding the struggle inside of Movant's residence….As such, witness Ford would, at best, provide context for agreed-upon facts already in evidence; that Officer Weusthoff entered Movant's residence. Prospective witness testimony which merely provides context to facts already in evidence cannot be said to provide a "viable defense," implicating ineffective assistance. [citation omitted]. Likewise, trial counsel's decision not to elicit witness testimony corroborating non-material details of a defendant's story is not ineffective assistance. [citation omitted] Here, witness Ford's testimony would merely confirm a non-material detail of the events, which is already in evidence.

(Doc. 12-10 at 59.) The Missouri Court of Appeals affirmed the decision of the motion court, holding Purnell failed to allege Ford's testimony would have established Purnell did not commit the crime. (Doc. 12-14 at 9.) The court further found that Ford's proposed testimony regarding Purnell's good reputation in the community would have been inadmissible as character evidence unrelated to traits inherent in the crime at issue. *Id.* at 9-10.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different

8

absent the errors. To satisfy *Strickland*, the likelihood of a different result must be "substantial, not just conceivable." *Id.* Under the Antiterrorism and Effective Death Penalty Act (AEDPA), the Court must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect. *Id.* at 785. This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786; *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012).

The record before the Court reflects the Missouri Court of Appeals reasonably applied *Strickland* when it rejected Purnell's claim. The appellate court found that Purnell cannot establish prejudice in counsel's failure to call Ford as a witness at trial, because Ford would not have provided a viable defense. Because Ford did not observe the charged conduct that occurred inside Purnell's house and only observed the preceding events that occurred outside, his testimony could not negate any elements of the crime. Thus, the decision of the Missouri Court of Appeals was not contrary to or an unreasonable application of clearly established federal law.

Accordingly, Ground Two is denied.

### V.     **Purnell's Motion**

Also pending is Purnell's "Motion for Emergency Release." (Doc. 32.) In this Motion, Purnell states that he does not "feel safe in my prison or jail." *Id.* at 1. Purnell then proceeds to set out multiple issues he has experienced during his incarceration, including lack of access to clergy, harassment by other offenders, and racist remarks made to him by guards. He requests that the Court release him.

Purnell's claims do not fall within the province of the federal habeas corpus statute, 28 U.S.C. § 2254.   To the extent Purnell is requesting an expedited ruling on his habeas petition, this request is now moot.   If Purnell is challenging the conditions of his confinement, then the civil rights statute, 42 U.S.C. § 1983, provides access to a federal forum for claims of unconstitutional treatment at the hands of state officials.   Purnell may file an action under § 1983 if he seeks to challenge the conditions of his confinement.

Accordingly, Petitioner's Motion will be denied.

## VI.   Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right.   *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999).   A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserved further proceedings.   *See Cox*, 133 F.3d at 569.   In this case, Purnell has failed to make a substantial showing of the denial of a constitutional right.   The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

## ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED and DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Emergency Release (Doc. 32) is **denied**.

Dated this 14th day of September, 2020.

        *s/Abbie Crites-Leoni*
        ABBIE CRITES-LEONI
        UNITED STATES MAGISTRATE JUDGE